IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LENA LASHER,<br><br>Plaintiff,<br><br>vs.<br><br>NEBRASKA STATE BOARD OF PHARMACY (NE BOP), State of Nebraska, Lincoln, Nebraska 68508; and THOMAS L. WILLIAMS, MD, Chief Medical Officer Director, Division of Public Health State of Nebraska Department of Health and Human Services Lincoln, Nebraska 68508;<br><br>Defendants. | 4:17CV3125<br><br>MEMORANDUM AND ORDER |

Plaintiff filed a Complaint on September 29, 2017. (Filing No. 1.) She has been given leave to proceed in forma pauperis. (Filing No. 12.) The court now conducts an initial review of Plaintiff's Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e) and 1915A.

## I. SUMMARY OF COMPLAINT

Plaintiff is a prisoner confined at the Federal Correctional Institution in Danbury, Connecticut. She brings this action against the Nebraska State Board of Pharmacy ("Board") and Thomas L. Williams ("Williams"), MD, Chief Medical Officer and Director of the Division of Public Health ("Director") of the Nebraska Department of Health and Human Services ("NDHHS"), challenging an adverse decision of the Board rendered on September 15, 2017, which revoked Plaintiff's pharmacist license.

Plaintiff alleges that the Pennsylvania State Board of Pharmacy revoked her pharmacist license due to a wrongful criminal conviction and the Board relied on this same conviction to revoke Plaintiff's Nebraska pharmacist license. ([Filing No. 1 at CM/ECF p.1](#).) In addition, Plaintiff claims that her pharmacist license was revoked based on her race, national origin, and sex because other white male pharmacists and technicians who testified at Plaintiff's criminal trial and admitted their guilt to the "'crime,' including prostitution and theft of narcotics and other miscellaneous items from various pharmacies, were not punished by any state Board of Pharmacy while the plaintiff, an Asian female of Vietnamese descent," was punished. (*[Id.* at CM/ECF pp.1–2](#).) Plaintiff asserts that the Board refused to consider Plaintiff's evidence demonstrating her innocence at a hearing on April 19, 2017, and erred as a matter of law in revoking her pharmacist license.

Plaintiff asks for a hearing in this court at which she may present evidence that she did not commit the crime for which she was convicted. For relief, Plaintiff seeks review and reversal of the Board's decision, as well as compensatory and punitive damages.

## II. APPLICABLE STANDARDS OF REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* [28 U.S.C. §§ 1915(e)](#) and [1915A](#). The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. [28 U.S.C. § 1915(e)(2)(B)](#); [28 U.S.C. § 1915A(b)](#).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *[Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 569-70 (2007)](#); *see also*

2

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

### III. DISCUSSION

Nebraska's Uniform Credentialing Act ("UCA"), Neb. Rev. Stat. §§ 38-101 to 38-1,142 (Reissue 2016 & Supp. 2017), regulates persons providing health and health-related services, including pharmacists. The Board of Pharmacy is a statutorily-established board designated by the Division of Public Health of the NDHHS to provide, among other things, "recommendations related to the issuance or denial of credentials [and] disciplinary action." Neb. Rev. Stat. § 38-161(1); *see also* Neb. Rev. Stat. §§ 38-158 and 38-167(u) (designating Board of Pharmacy as one of the boards appointed by the State Department of Health). Williams, as the Director of the NDHHS Division of Public Health, has "jurisdiction of proceedings

3

. . . to discipline a credential holder" and ultimately determines if and what type of sanctions should be imposed. Neb. Rev. Stat. § 38-176; *see also* Neb. Rev. Stat. § 38-116 (defining Director); Neb. Rev. Stat. § 38-192 ("The director shall have the authority through entry of an order to exercise in his or her discretion any or all of the sanctions authorized under section 38-196.").

The UCA provides that

> a credential to practice a profession may be denied, refused renewal, or have other disciplinary measures taken against it in accordance with section 38-185 or 38-186 on any of the following grounds:
>
> > (5) Conviction of (a) a misdemeanor or felony under Nebraska law or federal law, or (b) a crime in any jurisdiction which, if committed within this state, would have constituted a misdemeanor or felony under Nebraska law and which has a rational connection with the fitness or capacity of the applicant or credential holder to practice the profession;
> > . . . .
> > (11) Having had his or her credential denied, refused renewal, limited, suspended, revoked, or disciplined in any manner similar to section 38-196 by another state or jurisdiction based upon acts by the applicant or credential holder similar to acts described in this section . . . .

Neb. Rev. Stat. § 38-178. Where the grounds for discipline are based on another state's discipline of the pharmacy license holder, "a certified copy of the record of denial, refusal of renewal, limitation, suspension, or revocation of a license, certificate, registration, or other similar credential or the taking of other disciplinary measures against it by another state or jurisdiction shall be conclusive evidence of a violation." Neb. Rev. Stat. § 38-180.

Disciplinary proceedings against a pharmacy license holder are initiated by the Attorney General filing a petition with the Director. Neb. Rev. Stat. § 38-186; *see also* Neb. Admin. R. & Regs. Tit. 184, Ch. 1, § 006.01. Upon filing of a

4

petition, a hearing is set and notice of the hearing, along with a copy of the petition, is served on the license holder. Neb. Rev. Stat. §§ 38-188 and 38-189; *see also* Neb. Admin. R. & Regs. Tit. 184, Ch. 1, § 006.01. The Director or a hearing officer designated by the Director presides over the hearing, which is "summary in its nature and triable as an equity action." Neb. Rev. Stat. § 38-186. The Director or hearing officer may receive affidavits in evidence, and "[t]he department shall have the power to administer oaths, to subpoena witnesses and compel their attendance, and to issue subpoenas duces tecum and require the production of books, accounts, and documents in the same manner and to the same extent as the district courts of the state." *Id.* "Upon the completion of any hearing held regarding discipline of a credential, the director may dismiss the action or impose . . . sanctions," including revocation. Neb. Rev. Stat. § 38-196. Any person aggrieved by a final decision in a disciplinary proceeding under the UCA is entitled to judicial review in accordance with the Administrative Procedure Act ("APA"). Neb. Rev. Stat. § 38-1,102; *see also* Neb. Rev. Stat. § 84-917 (setting forth APA appeal procedure).

## A. Sovereign Immunity

Here, Plaintiff sues the Board and Williams in their official capacities only. *See Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("This court has held that, in order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity."). Liberally construed, Plaintiff alleges the Board's decision to revoke her pharmacy license violated her equal protection and due process rights.

Plaintiff's claims for monetary relief against the Board and Williams in their official capacities are barred by Eleventh Amendment sovereign immunity. Further, Plaintiff cannot sue the state or state officials in their official capacities for money damages under § 1983 because such suits are really suits against the state, and the state is not a "person" who can be sued under § 1983. *Kruger v. Nebraska,*

820 F.3d 295, 301 (8th Cir. 2016); *Zajrael v. Harmon*, 677 F.3d 353, 355 (8th Cir. 2012) (per curiam) (section 1983 provides no cause of action against agents of the state acting in their official capacities; sovereign immunity bars claim against state-agency employees for monetary damages under federal act); *Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (Eleventh Amendment bars claims against state and its agencies for any kind of relief; Eleventh Amendment bars claims for money against state officials in their official capacities).

While Defendants are immune from suit for damages in their official capacities, they may be sued on federal constitutional claims for prospective declaratory or injunctive relief under the exception to immunity recognized by the Supreme Court in *Ex Parte Young*, 209 U.S. 123 (1908). *See, e.g.*, *Klingler v. Director, Dept. of Revenue*, 281 F.3d 776 (8th Cir.2002) (allowing claim under Title II of ADA for declaratory and injunctive relief against state official). The court assumes for the purpose of review that this exception applies to the extent Plaintiff seeks reinstatement of her pharmacy license and relief from what she alleges is an unconstitutional denial of her ability to practice pharmacy in Nebraska. However, as set forth below, the Complaint's allegations fail to state a plausible due process or equal protection claim.

**B. Substantive Due Process**

Plaintiff claims that revoking her pharmacy license due to a "wrongful" conviction violates her substantive due process right to pursue her occupation. (Filing No. 1 at CM/ECF p.3.) "To establish a violation of substantive due process rights by an executive official, a plaintiff must show (1) that the official violated one or more fundamental constitutional rights, and (2) that the conduct of the executive official was shocking to the contemporary conscience." *Truong v. Hassan*, 829 F.3d 627, 631 (8th Cir. 2016) (internal quotations and citations omitted). "To be conscience shocking, the government action must be 'truly irrational, that is, something more than . . . arbitrary, capricious, or in violation of

state law.'" *Draper v. City of Festus*, 782 F.3d 948, 953 (8th Cir. 2015) (quoting *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir.1998) (en banc)).

Here, Plaintiff's allegations do not rise to the "conscience shocking" level. It is well established that states may regulate and discipline professionals, including suspending the privilege to practice, without running afoul of substantive due process. *See N. Carolina State Bd. of Dental Examiners v. F.T.C.*, 135 S. Ct. 1101, 1119 (2015) (J. Alito, dissenting) (recognizing that states' establishment of medical boards with authority to confer and revoke licenses "was quintessential police power legislation, and although state laws were often challenged . . . under the doctrine of substantive due process, the licensing of medical professionals easily survived such assaults"); *see also Sedivy v. State ex rel. Stenberg*, 567 N.W.2d 784, 792 (Neb. App. 1997) (finding "no authority for . . . proposition that the state may not, as a matter of substantive due process, regulate the professions by determining who may practice, or continue to practice, a profession").

**C. Procedural Due Process**

"The Supreme Court mandates a two-step analysis for procedural due-process claims: 'We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient.'" *Jenner v. Nikolas*, 828 F.3d 713, 716 (8th Cir. 2016) (quoting *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011))."Protected liberty interests may arise from the Due Process Clause itself or from an expectation or interest created by state law or policies." *Id.* (citing *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). "Generally, 'due process requires that a hearing before an impartial decisionmaker be provided at a meaningful time, and in a meaningful manner.'" *Booker v. City of Saint Paul*, 762 F.3d 730, 734 (8th Cir. 2014) (quoting *Coleman v. Watt*, 40 F.3d 255, 260 (8th Cir. 1994)).[1] "The

---

[1] "Within this general framework different situations may require different specific procedures." *Riggins v. Bd. of Regents of Univ. of Neb.*, 790 F.2d 707, 712 (8th Cir. 1986). "To determine what kind of process is due, courts balance three factors: '(1) the nature and weight of

most important mechanisms for ensuring that due process has been provided are 'notice of the factual basis' leading to a deprivation and 'a fair opportunity for rebuttal.'" *Senty-Haugen v. Goodno*, 462 F.3d 876, 888 (8th Cir. 2006) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 226 (2005)); *see also Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 (1978) ("The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.'"). A plaintiff is entitled to due process only when a protected property or liberty interest is at stake. *See Hopkins v. Saunders*, 199 F.3d 968, 975 (8th Cir.1999).

For purposes of initial review, the court assumes that Plaintiff has a protected property interest in her Nebraska pharmacy license. *See Kloch v. Kohl*, 545 F.3d 603, 607 (8th Cir. 2008) (recognizing that a protected property interest "may exist where a state has established a licensing system for regulation of professionals"); *VanHorn v. Nebraska State Racing Com'n*, 304 F.Supp.2d 1151, 1166 (D. Neb. 2004) (finding veterinarian had due process-protected property interest in special license from state racing commission to treat racehorses under statute requiring commission to license every eligible applicant and regulations which did not impose special eligibility requirements for issuing license to practicing veterinarian).

Liberally construing the Complaint, Plaintiff claims she was denied procedural due process because the hearing she received was inadequate. That is, Plaintiff complains that she was not permitted to present evidence challenging her conviction. The question presented is whether Defendants, in failing to allow Plaintiff to present her evidence, thereby deprived Plaintiff of a meaningful remedy for the alleged deprivation of her protected property interest. Plaintiff does not

---

the private interest affected by the challenged official action; (2) the risk of an erroneous deprivation of such interest as a result of the summary procedures used; and (3) the governmental function involved and state interests served by such procedures, as well as the administrative and fiscal burdens, if any, that would result from the substitute procedures sought.'" *Booker*, 762 F.3d at 734 (quoting *Coleman*, 40 F.3d at 260).

allege that she filed an appeal in accordance with the APA as provided by Neb. Rev. Stat. § 38-1,102.

Generally, a plaintiff is not required to exhaust state remedies as a prerequisite to bringing an action pursuant to § 1983. *See Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 516 (1982). The Eighth Circuit, however, has "recognized an exception to *Patsy*'s general rule that exhaustion of state remedies prior to bringing a section 1983 claim is not required." *Keating v. Neb. Pub. Power Dist.*, 562 F.3d 923, 929 (8th Cir. 2009). It is the rule in this circuit that "a litigant asserting a deprivation of procedural due process must exhaust state remedies before such an allegation states a claim under § 1983.'" *Hopkins v. City of Bloomington*, 774 F.3d 490, 492 (8th Cir. 2014) (quoting *Wax 'n Works v. City of St. Paul*, 213 F.3d 1016, 1019 (8th Cir. 2000)); *see also Christiansen v. W. Branch Cmty. Sch. Dist.*, 674 F.3d 927, 935-36 (8th Cir. 2012) (affirming the dismissal of a complaint alleging post-deprivation procedural due process because the plaintiff failed to pursue available post-termination administrative remedies); *Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009) ("[T]his requirement is distinct from exhaustion requirements in other contexts. Rather, this requirement is necessary for a procedural due process claim to be ripe for adjudication.").[2] "However, it is not necessary for a litigant to have exhausted available *postdeprivation* remedies when the litigant contends that he was entitled to *predeprivation* process." *Keating*, 562 F.3d at 929 (emphasis in original).

---

[2] This exhaustion requirement is "a nuanced exception to *Patsy* that applies to certain procedural due process claims." *Christiansen*, 674 F.3d at 935. The exception has only been applied to procedural due process claims involving alleged deprivations of property interests. *See Crooks*, 557 F.3d at 848–49 ("[A] litigant asserting a deprivation of [a property right in violation of] procedural due process must exhaust state remedies before such an allegation states a claim under § 1983.") (quoting, with bracketed modifications, *Wax 'N Works*, 213 F.3d at 1019); *Oglala Sioux Tribe v. Van Hunnik*, 993 F. Supp. 2d 1017, 1028 (D.S.D. 2014) (likewise recognizing that "[t]he Eighth Circuit [in *Crooks*] limited the holding in *Wax 'n Works* to suits seeking redress for loss of a property interest"). Here, Plaintiff is claiming she was deprived of a protected property interest–her continued ability to practice pharmacy in Nebraska.

9

Because Plaintiff has not alleged that she pursued available postdeprivation process by filing an appeal pursuant to the APA,[3] her procedural due process claims are dismissed to the extent they allege the denial of postdeprivation due process. Plaintiff's Complaint alleges the denial of predeprivation process, and such claims are not subject to the exhaustion requirement discussed above. However, the Complaint fails to state a plausible claim of denial of predeprivation process and her remaining due process claims will be dismissed on that basis.

Plaintiff does not claim that she was denied notice or a hearing before her pharmacy license was revoked. Rather, Plaintiff challenges the sufficiency of the predeprivation process she received on the grounds that she was not permitted to provide, nor would Defendants consider, evidence "which proves her innocence." (Filing No. 1 at CM/ECF p.1.) However, to the extent Plaintiff seeks an opportunity to avoid the revocation of her pharmacy license by demonstrating that she was wrongfully convicted, such relief necessarily undermines her criminal conviction and is barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck v. Humphrey*, the Supreme Court held a prisoner may not recover damages in a § 1983 suit where the judgment would necessarily imply the invalidity of his conviction, continued imprisonment, or sentence unless the conviction or sentence is reversed, expunged, or called into question by issuance of a writ of habeas corpus. *Id*. at 486–87; *Schafer v. Moore*, 46 F.3d 43, 45 (8th Cir. 1995). *See Sheldon v. Hundley*, 83 F.3d 231, 233 (8th Cir. 1996) (indicating that, under *Heck*, court disregards form of relief sought and instead looks to essence of plaintiff's claims); *Harvey v. Horan*, 278 F.3d 370, 375 (4th Cir. 2002) *abrogated on other grounds by Skinner v. Switzer*, 562 U.S. 521 (2011) (*Heck* applies to claims for damages, as well as to claims for injunctive relief that necessarily would imply the invalidity of plaintiff's conviction); *Lawson v. Engleman*, 67 Fed. Appx. 524, 526 n.2 (10th Cir. 2003) (*Heck* applied to plaintiff's claims for monetary, declaratory, and injunctive relief; *Heck* should apply when the concerns underlying

---

[3] It does not appear that Plaintiff has filed any appeal of the decision revoking her pharmacy license. The court has online access to the records of the Nebraska state courts and a search of those records does not disclose any pending state cases to which Plaintiff is a party.

*Heck* exist). Plaintiff has not alleged that her conviction has been overturned, expunged, or called into question, and she is, therefore, barred from obtaining relief for a due process violation predicated on demonstrating her conviction's invalidity.[4]

## C. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment requires that States treat similarly situated persons alike. *Creason v. City of Washington*, 435 F.3d 820, 823 (8th Cir. 2006). To prevail on an equal-protection claim, a plaintiff must show that the challenged government action both had a discriminatory effect and was motivated by a discriminatory purpose. *See United States v. Armstrong*, 517 U.S. 456, 465 (1996). Plaintiff alleges that her license was revoked based on her race, national origin, and sex because other white male pharmacists and technicians who testified at Plaintiff's trial and admitted their guilt to the "'crime' . . . were not punished by any state Board of Pharmacy while the plaintiff, an Asian female of Vietnamese descent," was punished. (*Id.* at CM/ECF pp.1–2.)

Plaintiff has failed to allege sufficient facts to state a plausible equal protection claim. The Complaint contains no facts indicating that Defendants were motivated by a discriminatory purpose or that Plaintiff was treated differently than any other Nebraska pharmacy license holder with a criminal conviction. Rather, Plaintiff alleges that Defendants relied on her conviction to revoke her Nebraska pharmacy license and Nebraska's UCA clearly provides that conviction for a crime may be grounds for revocation. *See* Neb. Rev. Stat. § 38-178. The Complaint does not allege that the other white male pharmacists and technicians were convicted of a crime or that any of them hold a Nebraska pharmacy license. Thus, Plaintiff has

---

[4] It is worth noting that the Nebraska Supreme Court has explicitly held that "[t]he conviction of a felony cannot be collaterally attacked in a proceeding before the Director of Health for revocation of a license to practice a profession." *State ex rel. Meyer v. Eyen*, 184 Neb. 848, 850, 172 N.W.2d 617, 618–19 (1969). Thus, under Nebraska law, Defendants' alleged failure to allow Plaintiff to present evidence challenging her conviction appears to have been entirely proper.

not alleged facts suggesting she was discriminated against or treated differently from similarly situated persons.

**D. State Law Claims**

Plaintiff raises a state law claim in that she seeks review of the Board's decision revoking her pharmacy license. The court declines to exercise supplemental jurisdiction over Plaintiff's state law claim because it will dismiss all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3).

## IV. CONCLUSION

Plaintiff's Complaint fails to state a claim upon which relief can be granted for alleged deprivations of Plaintiff's rights under the Due Process and the Equal Protection Clauses of the Fourteenth Amendment. The court will, therefore, dismiss Plaintiff's Complaint without prejudice. The court will not give Plaintiff an opportunity to amend her complaint in this matter because the court has determined that amendment would be futile.

IT IS THEREFORE ORDERED:

1. Plaintiff's Complaint (filing no. 1) is dismissed without prejudice.

2. The court will enter judgment by separate document.

Dated this 25th day of April, 2018.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge